165942 Odoese Hitchcock v. Cumberland Univ 403B D.C. P.A. 10 minutes for plaintiffs, 5 minutes for amicus, 15 minutes for defendants Good morning. My name is Carla Campbell. I'm here on behalf of the appellants Eloise Hitchcock and Cheryl Kaye. May it please the court. This case is before you on the district court's grant of judgment on the pleadings on the basis that appellants' failure to exhaust administrative remedies for their claims. Review of that decision is de novo. Plaintiffs' appellants, a college librarian and a college professor, participated in Cumberland University's retirement program while they worked there. Rather than making the contributions to the retirement plan they promised, the university instead misdirected those monies for other purposes. Appellants allege that the university's misconduct violates the Employee Retirement Income Security Act, ERISA. ERISA creates two types of claims, denial of benefit claims and statutory violation claims. Is the only question we have before us here the question of procedure of exhaustion of administrative remedies? Whether the order there of the district court to exhaust the remedies, is that the only question we have before us? Yes. There are ancillary issues but that is the gravamen of the case and your decision on that would be dispositive of whether we get to go back and litigate the merits of this case. So that is the only one that I'm focusing the court's attention on today. Now are you arguing also that you're automatically entitled to not have to go through the exhaustion process? Or are you arguing that it is a matter of futility and there is, be futile, what's your submission on that? We certainly do not concede the futility argument but our argument in this case is that the court does not need to reach that. That it can decide this issue of first impression and establish the clear precedent in this case that if you are raising only statutory claims under ERISA, you do not have to exhaust those. We do not raise a denial of benefit claim which precedent is clear in every circuit and we do not argue otherwise that those are subject to exhaustion under the terms of the plan's exhaustion requirement. What would be the harm, if you will, or the countervailing considerations for requiring exhaustion even on statutory claims because you would get a more complete record, correct? So what are the arguments? The argument, I'll make two arguments. The first is that exhaustion of statutory claims deserves the plan participants. My clients have brought claims on behalf of the plan themselves, the plan itself, which ERISA allows you to do. Are you saying by that that there should never be a requirement for any exhaustion? For statutory claims, for claims that allege that the plan fiduciaries, the people who would be deciding whether to give you the relief you're seeking in the administrative claim, have violated the statute per se. To go back to your question, I believe it deserves plan participants because participants can bring claims on behalf of the plan itself. In doing so, this is a mechanism almost like a class action. In doing so, they're seeking to make the plan itself whole. They're seeking to benefit all participants. If a single participant was required to exhaust his statutory claims, he would only get relief on himself. He would never be able to arrive to the point where he could seek plan-wide relief. I also think that it deserves the interest of the plan fiduciaries themselves because if a participant makes a claim that the plan itself, the terms of the plan, violates ERISA, then making an internal claim, having to exhaust that claim before the administrator, puts the administrator in a very difficult and, in fact, impossible position. Because my client goes to the administrator and says, your plan as it's written violates ERISA. The administrator has a fiduciary duty to enforce the terms of its plan as written. He does not write the plan. The plan sponsor writes the plan. His job is to interpret the plan. He has no discretion under ERISA to enforce anything other than the terms of the plan, even if he believes himself that those terms violate ERISA, which is exactly what we're arguing here. So the point is that... to have to exhaust could never make any difference one way or another in any case. Correct. I also at times represent plans, and I would not relish having to advise a plan administrator who is faced with a statutory claim, claiming that the terms of my plan that I have a fiduciary obligation to enforce are, in fact, violative of ERISA. And that could never lead to settlement or anything of that kind. Correct. Correct. That's an impossible decision for him. He cannot ever agree with the claimant and say, yes, I agree with you, the terms of the plan are in violation of ERISA. I think the statute, of course, doesn't require the exhaustion of administrative remedies, but does set up a sort of procedure that's somewhat like administrative law. And as you well know, in administrative law, there is the requirement, even if it's clear to the court, but the outcome of the administrative case should be that you have to first exhaust your administrative remedies. And so I guess that's where this came from years ago, and that's why it's continued on as it has. Correct. I would take issue... you're absolutely correct. There is a provision of ERISA 29 U.S.C. 1133 that requires every ERISA plan to establish an internal claims procedure in its terms for, quote, claims for benefits. My argument is that these are not claims for benefits. They are not making a claim asking for the plan administrator to give them their individual pension benefit. They are making a claim asking the court to say that what they have done violates ERISA. So your argument is that the statutory issue is a legal determination best suited for the courts rather than arbitration, such as a dispute with regard to how the benefits should be computed. Correct. Plan administrators clearly have the discretion, and we do not dispute that, to interpret the plan terms. And that makes good sense. It allows them to manage plan assets, to interpret plan terms in a way that suits their plan. This is not the case with statutory claims. A plan administrator does not have discretion to interpret ERISA. That is the providence of this court. I know your time is up here, but let me ask you this. I know your side requested certain documents in the district court, and the ERISA plan, including the summary plan description, your opposing counsel refused to produce those or turn those over, and for reasons I cannot understand, the court did not force them to turn those over. Why should we rule on this case at all when we do not have the documents in the record to look at here? Yes, I agree. And that's why we don't concede the futility argument. We've made the argument that we do not have all the planned documents. To this day, we still do not have all the planned documents. And for that reason, we believe that exhausting the administrative remedies would be futile. However, if you engage in that, if you go down that path, then what will have to happen is we'll have to go to the district court, ask him to force them to give us the documents because for some reason they won't give them to us. We'll then exhaust the administrative claim, asking them to do something that they don't have the discretion to do, and then a year from now wind back up at the district court after these people have suffered the loss of earnings and their pension for that time. All right. Thank you. Thank you. Good morning. You may proceed. Good morning. My name is Blair Byram, and I represent the Acting Secretary of Labor, Ed Huebler, as amicus curiae. Administrative exhaustion should not apply to the plaintiff's statutory claims for anti-cutback violations and fiduciary breach. Administrative exhaustion was designed for benefits claims, not statutory claims, and there is no basis in ERISA for requiring the administrative exhaustion of statutory claims. Accordingly, a majority of circuits addressing this issue, six circuits, have held that administrative exhaustion is not required when a plaintiff asserts a statutory claim under ERISA. These courts have reasoned that it is the judiciary that has the expertise to interpret statutory terms, not plan administrators. And this circuit has already adopted similar rationale in Durand, where it noted that a plan administrator does not have the discretion to interpret ERISA or the discretion to determine the legality of its own plan. Administrative exhaustion should not apply to the plaintiff's statutory claims because it goes against common... Doesn't have discretion. They have to... The administrator has to interpret the plan, right? The administrator certainly has to interpret the plan and... And can have some ambiguities in it. Yes, the plan administrator is an expert in interpreting plan terms, but the plan administrator is not an expert in interpreting... Nobody's an expert, you know. I mean, the question is if there are ambiguities in the plan, it's helpful to the court because the court is not an expert in ERISA. We don't get these cases every day and so on. It would make some sense and give the court some help to find out what it is the administrator thinks the plan means. So that's why I'm questioning whether this idea that you courts... I have been a judge for 40 years. I don't think I'm an expert any more than the plan administrator would be in interpreting what the meaning of the plan is. So it would be helpful to me, perhaps, to know what the plan administrator thinks the plan means. You follow me? I do. In this case, however, there's no issue of plan interpretation that is before the court. This is a purely statutory... Purely statutory claims are before the court about fiduciary breach and anti-cutback violations. And as there is no need for input on the plan administrator to determine the plan's terms because what is at issue is interpretation of ERISA itself, the statute itself. And administrative... When enacting ERISA, Congress had an intent of providing ready access to courts for plan participants. Administrative exhaustion is a limited exception to this. Born out of ERISA Section 503, it requires plans to have full and fair procedures for denied benefits claims. But that doesn't necessarily translate to statutory claims in general. These claims concern substantive provisions of ERISA, which the plan administrator should not have a say in determining whether the plan is in accordance with ERISA. We can't expect plan administrators who are facing personal liability on these claims to adopt full and fair review procedures of the claims against them. Plaintiffs should have direct resort to federal court when they assert breaches or violations by the fiduciaries who would review their claims. And this court has before made similar observations, such as in Richards v. General Motor Corps, where it held that a retaliatory discharge claim wasn't precluded based on failure to exhaust administrative remedies because the review procedures which the plan had were designed for benefit claims, not for statutory claims. And the district court also erred in dismissing the plaintiff's fiduciary breach claims on the grounds that it was a repackaged claim for benefits because the plaintiff's fiduciary breach claim, again, is a statutory claim. The plaintiffs are seeking redress of an employer's failure to fund a promised benefit. The employer promised to provide an employer match, then didn't fund that employer match, and then tried to undo its obligation to provide the promised match through a retroactive amendment. The plaintiff should be able to go directly to federal court to say, with their claim, that the plan is in violation of ERISA. Thank you. All right, thank you. Please, the court. Daniel will leave us on behalf of the appellees, Cumberland University, et al. Counsel, you know, I guess there was a motion filed before the district court to dismiss, and the plaintiffs indicated that one of their concerns in response to the motion was that they had not received the ERISA plan documents, and you and or your client apparently would not turn those documents over. So we've got this case up here. We don't have the summary plan description or anything. For the life of me, I don't understand why your client wouldn't turn those plan documents over to the plaintiffs. Well, Your Honor, I think you do have the summary plan documents. I believe they were made exhibits to the complaint, at least the 2008. Well, the plaintiffs claim, I think they claim they haven't received any documents since 2009. They only have the plan documents from 2009, I think is what they say. But they wanted these other plan documents for the other years, which would be important, obviously, because your client had proceeded to change the plan subsequent to 2009, and you wouldn't turn those over, and I don't understand why. Well, let me start with the front end of Your Honor's question. Attached to the complaint were some plan documents. They were documents 1-1, 1-2, and 1-3. Well, those were just snippets. You haven't turned over all these documents for subsequent years? No, and let me get to that point. Your Honor, they filed their complaint in November of 2015, and then they propounded a written set of discovery on December 28th of that same year, 15. They had the initial case management conference late in January, and then my client moved on February 9th, 2016. So last year, February last year, moved to dismiss, and then there was a motion to stay discovery that came a few days later. I think the point is, on the discovery request, is it was made in a defense to having to respond to the challenge to the sufficiency of the complaint under Rule 12. And I think from a procedural point of view, you're not entitled to discovery on a Rule 12 motion, and so. Well, you were moving to, you had filed a dispositive motion to get rid of the entire case, and in view of the allegations, the planned documents were pertinent to the complaint allegations, and the plaintiffs were claiming they needed the documents to fully respond to your dispositive motion, which seems to be a reasonable thing to say, and yet you still wouldn't turn them over. And now the case is up here on appeal. There are arguments about what the plan provides, and we don't even have the planned documents to look at. Well, if I may push back a little bit on that, the motion, the dispositive motion was on the face of the pleadings. There was enough in front of the district court on the face of the pleadings to make the ruling that it did and to get us up here. Okay, but under Twombly and Iqbal, now, we're not just looking at the bare facial allegations that we used to look at. There's a little bit more, which would seem to me would make the provision of those documents really critical for them to respond to your dispositive motion. Well, I mean, it's not a Rule 56 review, but it's certainly more than the short and plain statement criteria that existed before Twombly and Iqbal. Well, I would agree about the state of the law on Rule 12. But what I would say, Your Honor, is, and let me confess to the Court that I was not at that stage. So there are plenty of the ins and outs, the nuanced ins and outs I may not actually have the answer to. This was presented, of course, to the district court in a motion to stay discovery. That wasn't ruled on. But to your point, Your Honor, their allegations were that they had a request for benefits, they had a nominal anti-cutback claim, and they had a nominal fiduciary duty claim. And they attached the documents they thought that supported those claims. And it wasn't until they had to respond to the motion that they said, wait a second, we need more discovery. And then they asked for... But they needed to plan documents. They needed to plan documents. And you wouldn't turn those over, and for reasons that I really don't understand, the district court didn't require you to turn them over. Well, they needed the documents. This is not any far-reaching discovery we're talking about. We're talking about the basic plan documents. And the specialists, they were amended to provide for this, to reduce the pension benefit, which is what the lawsuit is all about. So the 5% matching contribution and all that, there might be information, I'm sure there's information, I would presume, pertaining to that reduction of the pension benefit, which is what the lawsuit is all about. And how you could not turn those over, I just don't understand. Well, I would urge the court to consider this. First of all, they needed more discovery, they said, in the shadow of requesting that the court convert the motion from Rule 12. I'm not talking about discovery in general right now. I'm talking about the fact that you wouldn't turn over the basic plan documents, including the summary plan description for the years in which the pension benefit was changed. Well, I guess Your Honor will have to retreat on that because I don't know what, I don't actually know the ins and outs of that particular issue. You were not the lawyer who did that. I was not. You might say in answer that maybe the lawyer who did that was a little overly adversary. Well, I would say that there might have been some zealous advocacy here. But I do think, in all fairness, it was presented in front of the court. And the complaint did have a motion to stay discovery. The issue that I think they have raised that has caught the court's attention was in front of the district court. I've got a question that goes to the argument here about exhaustion. I don't see what you're going to gain. Assuming that we have a futility doctrine instead of an automatic doctrine on the cutback, I don't see what you're going to gain that's going to make any difference at all through going through a delayed process of exhaustion. Why do you even, I mean, other than for purposes of delay, what is the purpose of this exhaustion? And just related to that, when you're talking about a statutory claim, what would exhaustion look like anyway? I mean, you know, Ms. Barham says that what you're talking about here is measuring the plan against the legal arrears of requirements, which is a court process. So what does exhaustion get you? Well, let me impact that. There was a lot there. I think to the first part, to Judge Merritt's question, I don't believe that the plaintiffs pleaded futility. I believe the district court did. I don't care what they pleaded. What are you going to get that, I mean, you're not helping me decide this case. What is going to be a difference in what the outcome could be as a result of waiting the length of time that it takes to go through an exhaustion of administrative remedies or remedies here? Well, I think when Your Honor asked that, pointed out earlier, the benefits of an administrative record never hurt. As a matter of fact, a lot of the courts that have adopted the rule, the majority rule, have had, in fact, full administrative records in front of them. Here's another point. I think that Fiduciary's case, is the Cumberland University broke and that is insolvent or something? Is that the reason for at least the allegations here or that they just decided they weren't going to comply with the 5%? It's my understanding that the amendment to make the 5% discretionary was a business decision based on financial considerations. I don't believe insolvency has been circulated and I don't want to represent to the court that I know one way or the other. But I do think this. Exhaustion is not a bad thing because Fiduciary's do have a duty, I believe, to pursue on behalf of the plan, or at least consider pursuing on behalf of the plan, breach of Fiduciary responsibility claims. There's no harm in bringing them to them. It's a minor inconvenience to the plaintiffs. We're not talking about a ton of time. I don't, but here's what I don't think. I don't think this circuit needs to adopt a bright line rule that's mechanically applied, which is what I think the Department of Labor is urging you to do. It may be that there are claims for which exhaustion means nothing. But in this case, Your Honor, what the district court found was that we had repackaged claims here for benefits. And repackaged claims for benefits must be exhausted. Now, they argued that that's not true. The Fiduciary duty part of the case. That's what the district court, well, the district court found, that they didn't actually respond to those arguments. But it also said that there were repackaged claims. So if it's true, and there is such a thing in the law as repackaged claims, so when you have repackaged claims, exhaustion makes perfect sense. And the district court, I believe here, was within its, didn't abuse its discretion when it found repackaged claims. And the benefit, then, is the benefit that goes with claims for benefits being required to be exhausted, which I think is what we have here, to Your Honor's point, in this case. That's what we have here. Now, I'd also want to make the point, if I could, that I don't think the court needs to reach any of these issues here because I think the plaintiffs have, I think the appellant waived these issues by failing to raise them in front of the district court. And let me point out what I mean. Well, they didn't have much of a chance. They didn't even have the planned documents. Well, but hear me out. Indulge me this far. We filed the motion to dismiss on the pleadings on February 9th of last year. Three days later, they filed a response, and their response was purely procedural, arguing the distinction among Rule 12 motions and asking to convert this to Rule 56. And I mention those two things, the speed and the length of their response, because in the initial case management order, they had 21 days to respond, and they had 25 pages of briefing. They made a tactical decision to respond in three days and talk about procedure. Well, we can't make this. I mean, by converting it, by seeking to convert it to a Rule 56, which would allow them, hopefully, to look at the documents, that's a strategic decision that they made, again, trying to get the planned documents. But, Your Honor, even under Twickball, you have to put into the complaint, as you file it, you have to put the facts that have the heft to overcome the plausibility standard. So you have to have done that beforehand. The idea that what you'll do is you'll sue and then move for discovery because you're entitled to discovery by the very virtue that you filed the lawsuit just isn't the law. And it shouldn't be the law. And that's why Twickball is what it is. So that they made a tactical decision to file a complaint without the information that they needed is not my client's. Wait a minute. Now, you're making the argument on procedural grounds. And what was done here procedurally in the district court was incorrect because there was a motion to dismiss, pursuant to which the district judge rendered his ruling. But it should have been a motion for judgment on the pleadings because the defendant had answered the complaint. So the procedural posture, or what was done procedurally, was incorrect anyway. The district court didn't properly follow the federal rules of civil procedure in making its ruling in any event. So I don't really, it's kind of hard to go off on this on a technical procedural basis when the district judge proceeded wholly incorrectly. Well, to that point, Your Honor, I think the timing issue is true between a Rule 12b-6 and a Rule 12c. But as the district court pointed out, in this case, since the standard is the same, that's a technicality. And there's plenty of case law, and not obscure case law, that allows this to happen. So I don't think that disqualifies the motion. And I have about four seconds left. Well, you can use your four seconds however you would, which you'll now use. I just did. Okay. Thank you, Your Honor. You'll have rebuttal if there is some. Let me try my three minutes to touch on his points, if I may. First, I'd like to briefly address Judge Merritt's point about the ambiguity of the plan. The point of distinguishing between claims for benefits and statutory claims is that when you have a statutory claim like we do, there is no ambiguity in the plan. We concede that the plan terms are whatever they say it is. And there's not disagreement about the facts. Our point is the plan terms, as they have drafted them and as they interpret them, violate ERISA. You cannot do a retroactive amendment that eliminates benefits, period. That's a violation of the anti-cutback rule. There's no requirement for the court to interpret ambiguity of the plan.  Second. There's never any reason under any circumstances to have an exhaustion and to see what the plan administrator thinks. Right. There's absolutely no benefit to either the participants or the plan itself, which is why six circuits have held that you don't have to do it. So you're saying that the ambiguity would only come into place when you're looking at a determination of benefits by the plan administrator, but the plan administrator would never be in a position where they would opine on the legality of the plan itself under the ERISA law. Okay. Correct. We're asking the court to say that it simply doesn't make sense for us to Does the administrator have to interpret ERISA, too? We believe that the courts interpret ERISA. The administrator may not ever interpret ERISA? The administrator's job is to interpret the terms of his plan document. He has been given that job by the plan sponsor, the person who adopted that plan. Well, the statute also provides that, doesn't it? Correct. I just don't see why you're so What do you want to If you get back down to the district court and you don't have to go through this elaborate process of exhaustion because there's nothing to be gained by it, it's just going to cost time, what then are you going to try to get done? Well, if we get back through exhaust We did file an internal claim at the same time we filed this appeal just to cover all of our bases. We're not trying to be obstructionary. Their time for responding to that claim has passed and we have not gotten a response. So whenever it is that we can get through that process, we will take my two clients and go back to the district court. He dismissed without prejudice, so presumably we can go back. It'll be a year or two from the time when we originally started. We will be able to bring claims on behalf of those two ladies. But the question as to whether they will ever be able to represent other participants who have not exhausted or the plan itself is still up in the air because they have taken the position that every participant in the entire plan has to exhaust in order for them to get back to the court. If we say that's wrong, is that before us now? I guess that's an alternative way that Your Honor could decide this case. We think it would just be easier for everyone for you to join the majority of your sister circuits and just say that you don't. This is an abstract question. We need to get to the merits of this case and your client's rights. We don't need to go off on some abstract procedural question necessarily. We just don't. We need to quit killing time and get to it. Yes, I agree. I agree. My interest is as a lawyer because I'm up here often on ERISA issues, and the less often I have to re-argue the same point, the happier that would make me. But you're absolutely correct from my client's perspective. They just want to have their pensions back. So you want us to hold that there is no requirement for exhaustion when it comes to a statutory claim? Yes, Your Honor. That's exactly right. About half the circuits are one way and half the circuits are another, and our circuit is floating around somewhere. It's a 6-2 majority. The majority is advocating that exhaustion is not required as we ask you to adopt. The law in this circuit is quite ambiguous. There are a number of cases who have said in dicta that you do not have to exhaust them, but no court has come straight out and said it, which is why we didn't exhaust in the first place because we took that dicta as a sign that we didn't have that requirement. Had we done that, we would have gone through this process and we wouldn't be here arguing this point before you. My time is up. Go ahead. Go ahead and say what you want to say. I just wanted to mention that if Your Honor wants to know about the documents, we had three documents. We have the two planned documents. Our argument would be that's enough for the anti-cutback claim. It shows the amendment what it was before and after. The point about the documents is a good one. It goes to the argument of futility, which is why we preserve futility. He incorrectly said that we did not. It's in paragraph 41 of our complaint that it would be futile. There is admittedly not a lot of detail about that because we don't have any of the SPDs. We don't know who the planned fiduciaries are, which is why we've sued them as John Does. We don't know what the claims procedure is. We have an old 2008 SPD. We understand but do not know for sure that there are two SPD summary plan descriptions that have been adopted since then. We don't have copies of them. I've asked between four and five times for them. I've never been given anything other than an email from the plan to one of my clients in which they, I guess, attached one of the more updated summary plan descriptions, but they refused to actually give me the copy of the summary plan description. The poor zealous of zealousness. Yes, and so unfortunately that complicates this case, which is why we don't concede futility, which is also why we didn't respond to the merits of exhaustion in our reply but saved them for our SIR reply because we found ourselves a bit exasperated by not being able to argue futility without knowing what the plan was. Let me ask you this. You've looked into the financial status, I take it, of the defendant here, and I assume the problem must have something to do with the fact they haven't got enough money to provide pensions, funds for pensions for their professors and employees. Is that right? They are still operating. They had enough money to redo the president's office, but these are facts. How many students are there in faculty? Do you know? I do not know that, Your Honor. I do know that there is a procedure under ERISA for cutting back accrued benefits, which would be an exception to the anti-cutback rule. It requires you to propose those. You have to show a business hardship, file it with the DOL and get approval. They've never attempted to do that. Do they still do that? I suppose if they had a business hardship and felt like they could meet that. They were broke, in other words. Right. I don't think that that would condone the fact that they have already violated the anti-cutback rule, but I guess going forward they could attempt to go through that procedure, but they did not do that. So I don't have any hard evidence of what their ability to pay is. They haven't shuttered the doors. They're still operating. I did want to just mention about waiver. I struggle to understand that argument, Your Honor, because the district court specifically recognized that this issue of exhaustion has not been decided by this court, and he made his decision on that basis. So I don't know how I could have waived an argument that the district court expressly used to decide the case. You said you had two documents, although I understand they've not given you most of the documentation. What two do you have? I have the pre-amendment plan document and I have the post-amendment plan document. Those are publicly available. That shows me what the 5% match was before and how they amended the plan to be retroactive. They amended the plan in October of 2014 and made it effective January 1, 2013, so almost two years before, to have a discretionary match. They've never gone through the procedure of designating what their annual discretionary match is, but presumably they're saying it's zero. So I do have those documents. There's a difference between the plan document and the summary plan description. The summary plan description is what contains the claim procedure, and we have the 2008 summary plan description, but not any of the summary plan descriptions more recent. And we don't have the one that would govern an administrative claim that we make today, or the one that we did make. The two documents you have, are those in the record? Yes, like opposing counsel said, they're attached to our complaint. Okay, thank you. I'm sympathetic to the lawyers in these ERISA cases. That statute is so poorly drafted, it just creates problems up one side and down the other. Well, that's why we ERISA practitioners appreciate it when the court grants clarity on some of these issues for us going forward. I like to say that there's a reason John Grisham never wrote an ERISA novel. It's not all that exciting. Thank you very much. Thank you very much. The case is submitted. There being no further cases for argument, we may adjourn court. This honorable court is now adjourned. Thank you. Thank you. Thank you.